Green, J.
delivered the opinion of the court.
This case depends entirely upon the construction to be given to the act of 1827, ch. 54, sec. 4 and 5. It is not the business of this court to determine as to the policy of the change in Our law which that act produced. That was a question for the legislature. Our duty is to expound and enforce the act.
In order to understand the more clearly what was intended by the provisions of this actj it will be useful to consider the evils which existed, and which it was intended to remedy.
Cases were not of unfrequent occurrence where a party dying would leave but little personal property, and a real estate consisting of one tract of land, Or one town lot, out of which numerous small debts would have to be paid. The personal fund being exhausted, each creditor who remained unpaid, must reach the land through the administrator, according to the provisions of the act of 1784. Here two striking evils present themselves. In the first place, the immense accumulation of costs would go far to diminish a fund already insufficient to pay the debts. In the next place, the estate would be sacrificed in satisfaction of a few of the first judgments that might be obtained; when, if it had been brought to sale under favorable circumstances, with a view to all of the debts, it might well nigh have extinguished them all. To remedy these evils, which existed in the mode of reaching real estate in the hands of the heirs, as prescribed by the act of 1784, and not to repeal that act, was the object of the act of 1827. It provides, that where the personal estate may be exhausted in the payment of debts, leaving just debts unpaid, the administrator may file a bill in chance *66 ry, and obtain a decree for the sale of the land, or so much thereof as may be necessary for the payment of the debts which may be shown to exist. Now, the very nature of the mischief proves, that the Legislature intended that the administrator should bring in all the creditors by the bill he was authorized to file. We have seen that one of the mischiefs was found in the number of suits, and the consequent great accumulation of costs. To remedy this, the act of 1827 intended to have but one suit, and but little costs. The other evil was, that creditors, instead of getting their judgments all at once, would obtain them at different periods, and consequently a few of the first would exhaust the whole estate. The act of 1827 intended, that the Chancellor, having an account of all the debts before him, and an exact knowledge of the character, description and probable value of the estate, should take the land into the custody of the court, and direct its sale for the benefit of all, under such circumstances as would insure the best price. It was easily to be seen, that at such a sale, at which all the creditors would be interested in making the property sell for the best price, where any impropriety in the sale could be corrected by the Chancellor and a re-sale ordered, and where an undoubted title would be vested in the purchaser by a decree of the court, a much larger sum would be produced for the estate, than could have been obtained without the intervention of this act.
If this be a just view of the state of things, would not the Legislature have been guilty of great folly, if it had been intended by this act that more than one bill should be filed by the administrator? If that were the intention, and a bill must be filed for each creditor, instead of saving costs, there would be a greater accumulation of them. Better in that case to have left the remedy as it was by the act of 1784. As we think it must be seen, that in the case where the administrator files a bill, all the creditors must be brought, or, at their election, may come in and *67 share rateably, it is next to be considered, what are the consequences it the administrator refuse to do so. JLhe act does not make it compulsory upon the administrator. to file a bill, but authorizes him to do so if he thinks proper.
The Legislature supposed that as the administrator would generally be an heir, or the near connection of the heirs, and as one of the objects of this act was to protect the interest of the heirs, and preserve as much of their inheritance as possible, that he would in most cases choose to avail himself of this means for a speedy and cheap adjustment of the estate. But if he neglected or refused to do so, the act further provides, that any bona fide creditor whose debt remains unpaid, may come in and file a bill for the attainment of the identical objects which would have been obtained bad the administrator filed one. The act says, “on the prayer of the administrator or of any bona fide creditor,” thus showing beyond a doubt, that they intended the bill should have the same effect, which-soever of these characters should file it.
If it has been shown that it would be absurd to suppose the Legislature intended the administrator to file a separate bill, to subject portions of the land to the payment of every separate creditor, it follows, that, it is equally absurd to suppose that it was intended that each creditor should file a bill as a remedy for the recovery of his debt; such a construction would aggravate every evil the act was intended to remedy.
It is insisted that the act restricts the satisfaction to such debts as are “shown to exist in the bill,” and that creditors whose debts are not mentioned and set forth in the bill, are excluded. It is further insisted, that as the court only gets jurisdiction in cases where the personal estate is exhausted in the payment of debts, if it should appear before final decree, that the administrator was chargeable with one dollar, which had not been exha *68 ust the payment of debts, the court could not go on, but must dismiss the whole proceeding.
These objections stick too closely to the letter, and wholly disregard the design and purport of the act. By “the debts shown to exist in the bill,” is meant all such debts as in the course of the investigation, which is originated by such bill, may be shown to exist. The provision in relation to the exhaustion of personal assets, “before any decree shall be made,” was only intended to preserve the policy of our former Legislation upon this subject; but surely the Legislature ought not tobe charged with the folly of intending, that if, after all the creditors are called in, and proceedings at law are stopped, it should appear by a mistake in the administrator’s accounts, or otherwise, that a small sum was yet in his hands unexhausted, that therefore, the court would have no jurisdiction to go on with the cause. Should any assets be found in the hands of the administrator, the Chancellor, before he decrees a sale of the land, must apply and exhaust them; consequently the administrator was a proper and necessary party to the bill, because the Chancellor can only know how the estate has been administered by an investigation of the administrator’s accounts, which can only be done effectually by having the administrator before him.
We think this injunction was proper. The objects of the act could not be accomplished but by the exercise of the injunction powers of the court restraining any proceedings against the heir by scire facias, the fund being by the act placed in the custody of the court on filing of the bill. The powers of the court of chancery depend upon the act of Assembly, and are not to be restricted by the rules of the chancery court of England. Let the decree be reversed, and the demurrer be disallowed.
Decree reversed.